## APPEAL OF O'NEIL CONSTRUCTION CO.

Docket No. 1701.   Decided July 27, 1926.

Credit balances in the accounts of the officers of the corporation which were allowed to remain in the business were borrowed capital.

*W. E. Baird, C. P. A.*, for the petitioner.
*Briggs G. Simpich, Esq.*, for the Commissioner.

### Before STERNHAGEN and ARUNDELL.

This is an appeal from the determination by the Commissioner of a deficiency in income and profits taxes for the calendar years 1919 and 1920 in the aggregate amount of $450.63.   The controversy arises over the refusal of the Commissioner to allow as invested capital certain credits given to officers as salaries and otherwise, which were allowed by the officers to remain and be used in the business without payment of interest.

#### FINDINGS OF FACT.

The petitioner was incorporated in and under the laws of Kansas on December 29, 1911, with a paid-up capital stock of $1,000, and with an authorized capital of $5,000.   Joseph O'Neil held 96 shares of stock and the remaining shares of stock were held as follows: By his father, P. J. O'Neil, one share; by his brother, E. P. O'Neil, one share; by two other relatives, one share each.

On January 2, 1914, in order to provide additional money to continue the business, the following amendment to the by-laws was adopted:

Officers of the company may let their salaries accumulate to their account, in excess of the amounts they withdraw, to be used in the business and no interest shall be paid thereon.   Money shall not be drawn on such accounts which may accumulate, in preference to any other indebtedness of this business.

In addition to the money which accumulated to the account of the officers, Joseph O'Neil and P. J. O'Neil, under the provision of the by-law adopted on January 2, 1914, these officers' accounts were increased by the money due them for expenses and also by certain cash deposits which they made.

.In the business of the corporation there was a total accumulation to the account of the officers, under the provision of this by-law and otherwise, at the beginning of the year 1919, amounting to $12,293.38, and at the beginning of the year 1920 a like accumulation amounting to $17,396.81.

50144°—27——29

OPINION.

ARUNDELL: Was the money which had accumulated at the beginning of each taxable year invested capital or was it borrowed capital? The petitioner contends that under article 813, Regulations 45, the money was paid-in capital. This article holds that it is largely a question of fact in each particular case. It reads in part as follows:

* * * amounts left in the business representing salaries of officers in excess of their actual withdrawals, * * * will be considered paid-in surplus or borrowed capital according to the facts of the particular case. The general principle is that if interest is paid or is to be paid on any such amount. ◊r if the stockholder's or officer's right to repayment of such amount ranks with or before that of the general creditors, the amount so left with the corporation must be considered as borrowed capital and be so treated in computing invested capital.

The money which might accumulate was to be used by the corporation in the business, without interest, but that does not mean that these officers put their salaries and other money into the business without any hope of recovery except as each would receive a return as a stockholder. The by-law adopted on January 2, 1914, recognized these balances of the officers as obligations of the corporation. Under its terms the salaries might accumulate *to their account.* So much of the accumulation as was made up by money due for expenses and by cash deposits made by the officers was in no way affected by the by-law, and, as to this money, we see no reason why the officers could not withdraw their portion at their pleasure. Joseph O'Neil testified that he hoped to get the money back at some time, thus explicitly denying any intention to donate his money to the corporation. Under the wording of the by-law, the officers were not to receive their undrawn salary balances in preference to any other creditors, but they were entitled to receive them just as any other creditor of the corporation would be entitled to receive payment for amounts due him.

The case is ruled by *Appeal of Kelly-Buckley Co.,* 1 B. T. A. 1154. The facts here are even stronger than those in the *Kelly-Buckley Co.* appeal. The resolution there was that the personal accounts of the principal stockholders, Kelly and Buckley, "remaining in the business shall be *deferred* as to payment of general creditors." Here we have a by-law which merely provides that "Money shall not be drawn on such accounts which may accumulate, in *preference* to any other indebtedness of this business." (Italics ours.) In the *Kelly* case, the stockholder's or officer's right to repayment ranks after that of general creditors, while in the present case the officer's right is neither deferred nor preferred and therefore would at least rank with the right of general creditors to repayment.

We therefore hold, under the *Kelly-Buckley* appeal and the facts in this case, that the amounts in question were borrowed capital within the meaning of the law, and were properly excluded from invested capital by the Commissioner.

> *The deficiency is $450.63 for the years 1919 and 1920. Order will be entered accordingly.*